**JSG TRADING CORP.,**
**Plaintiff–Appellee,**

v.

**TRAY–WRAP, INC.,**
**Defendant–Appellant.**

**No. 982, Docket 89–9032.**

United States Court of Appeals,
Second Circuit.

Argued March 14, 1990.

Decided Sept. 26, 1990.

Linda Strumpf, Bayside, N.Y., for defendant-appellant.

Mark C. Mandell, New York City, for plaintiff-appellee.

Before KEARSE, CARDAMONE, and MAHONEY Circuit Judges.

CARDAMONE, Circuit Judge:

Underlying this litigation is an alleged delay in a shipment of $24,000 worth of tomatoes. Delay is serious in the tomato business because what is today a marketable commodity becomes tomorrow spoiled and unmarketable garbage. In common parlance tomatoes are vegetables, as the Supreme Court observed long ago, *see Nix v. Hedden*, 149 U.S. 304, 307, 13 S.Ct. 881, 882, 37 L.Ed. 745 (1893), although botanically speaking they are actually a fruit. 26 *Encyclopedia Americana* 832 (Int'l. ed. 1981). Regardless of classification, people have been enjoying tomatoes for centuries, even Mr. Pickwick, as Dickens relates, ate his chops in "tomata" sauce.

At issue in this appeal is whether legislation enacted to mitigate sellers' damages in transactions involving perishable commodities authorizes preliminary injunctive relief against a buyer that refused to pay for the tomatoes it ordered because of a contract dispute. It was Congress' aim to protect sellers by requiring all proceeds from unpaid perishable commodities to be held in trust, but a seller is not automatically entitled to a preliminary injunction that would require a buyer to segregate and hold trust assets separate from other assets of the buyer's business. Because the district court granted an injunction without applying the traditional standards for its issuance, we reverse.

## BACKGROUND

Appellant, Tray–Wrap, Inc. (Tray–Wrap), a distributor of fruits and vegetables, licensed under the Perishable Agricultural Commodities Act by the Secretary of Agriculture, 7 U.S.C. § 499a *et seq.* (1988) (Act or Perishable Commodities Act), conducts a wholesale produce business in the Bronx, New York. Appellee, JSG Trading Corp. (JSG), a New Jersey corporation, is also a licensed wholesale dealer of produce. Tray–Wrap purchases bulk quantities of tomatoes that come from various parts of the country, repackages them into consumer-sized packages, and sells them to supermarkets in the Greater New York market. On April 25, 1989 it ordered a large shipment of tomatoes over the telephone from JSG at an agreed price of $24,080. JSG shipped this order on May 9, 1989 and it was received by Tray–Wrap three days later on May 12. Apart from these conceded facts, nearly all the other facts in this case are in dispute.

Tray–Wrap alleges that its April 25th order was to be shipped on that date and that it inquired of JSG concerning its arrival, prior to purchasing replacement tomatoes at a higher price from a different supplier. JSG asserts to the contrary that Tray–Wrap's order was not accepted with a specific shipping date in mind, but was to be shipped "ASAP," indicating that the shipper is not sure when it can ship but expects it will be within a reasonable time and, in any event, "as soon as possible." 7 C.F.R. § 46.43(h) (1990). Tray–Wrap further contends that it had contracted for # 2 grade, green Florida tomatoes "delivered." In the trade the term "delivered" or "delivered sale" means that "the produce is to be delivered by the seller ... free of any and all charges for transportation or protective service. The seller assumes all risks of loss and damage in transit not caused by the buyer." *Id.* § 46.43(p). JSG contends that no grade was specified and that condi-

tion on arrival was agreed upon in the oral order of sale.

As a result of JSG's alleged late delivery of out-of-grade tomatoes, Tray–Wrap claims to have suffered damages in excess of the value of those it purchased and has refused to pay for them. JSG therefore on May 18, 1989 filed a notice with the United States Department of Agriculture, claiming that it was a beneficiary of the trust created by the Act. As such, it preserved its rights to a trust in the tomatoes, and to all inventories of food or other products derived from them and to any receivables or proceeds realized from their sale until Tray–Wrap made full payment. JSG also instituted the instant action and sought a preliminary injunction pursuant to Fed.R. Civ.P. 65 that would require Tray–Wrap, as statutory trustee under the Act, to deposit $24,080 into a separate interest bearing account to be supervised by the court and to be maintained until a final disposition of JSG's suit. On September 22, 1989 the United States District Court for the Southern District of New York (Keenan, J.) issued an order granting JSG a preliminary injunction.

Tray–Wrap appeals from that order, contending that neither the language nor the legislative history of the Perishable Commodities Act requires that a statutory trustee segregate trust funds prior to defending a suit under the Act. Thus, appellant argues that the court should have applied the usual requirements for preliminary injunctive relief and denied appellee's request for injunctive relief because JSG made no showing of likelihood of irreparable harm if the trust assets were not segregated.

## DISCUSSION

### I Trustee's Responsibility Under the Act

■ We turn first to the Act which, as amended in 1984, provides suppliers of commodities with a statutory trust to enforce the payment obligations of commission merchants, dealers and brokers:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

Congress added this trust provision to protect the security interest of sellers of perishable agricultural products that are sold and delivered to buyers, but not paid for. Arrangements under which merchants, dealers and brokers that had not made payment for the agricultural commodities, but used the produce instead as collateral to finance their business operations, Congress believed constituted a burden on interstate commerce. H.R.Rep. No. 543, 98th Cong., 2d Sess. 3–4, reprinted in 1984 U.S.Code Cong. & Admin.News 405, 406–07 (House Report). Were the merchants, dealers or brokers to experience cash-flow difficulties or go bankrupt, whatever funds and assets remained would therefore go first to pay secured creditors. Id. at 3, 9, reprinted in 1984 U.S.Code Cong. & Admin.News at 407, 413. The seller of the perishable agricultural goods as an unsecured lender would have to look to the equity left in the buyer's business for payment—a most unpromising vista.

Although the use of a trust under the Act was aimed at remedying problems created by buyers' bankruptcies, the trust was also envisioned as a method of enforcing debts against solvent buyers. In fact, by operation of § 499e(c)(2), a statutory trust in a defined res is created whenever a seller or supplier of perishable agricultural products provides such products to a commission merchant, dealer, or broker on credit. See, e.g., Frio Ice, S.A. v. Sunfruit, Inc., 724 F.Supp. 1373, 1376–77 (S.D. Fla.1989); Fresh Western Marketing v. M

*& L Food Center, Inc.*, 707 F.Supp. 515, 516 (S.D.Fla.1989); *DeBruyn Produce Co. v. Victor Foods, Inc.*, 674 F.Supp. 1405, 1407 (E.D.Mo.1987). If the seller gives timely notice of its intent to preserve its benefits under the trust, the buyer must conduct itself as trustee of its assets until the seller is paid in full. *See* 7 U.S.C. § 499e(c)(2), (3).

Yet neither the language of the statute nor its legislative history suggests that trust assets actually need to be segregated from a buyer's other assets. Instead, the statute clearly provides that a trust is created in the "[p]erishable agricultural commodities[,] ... and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products." *Id.* § 499e(c)(2).

Additionally, even a cursory review of the Perishable Commodities Act's history reveals that the segregation of trust fund assets was not one of Congress' purposes:

The trust impressed by section 5(c)(2) is a nonsegregated "floating trust" made up of all a firm's commodity related liquid assets, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically identify all of the trust assets through each step of the assets accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them.

House Report at 5, *reprinted in* 1984 U.S. Code Cong. & Admin.News at 409; *see also* 7 C.F.R. § 46.46(c) (1990) ("Trust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of trust assets is contemplated.").

The term "nonsegregated floating trust" is used extensively throughout the brief legislative history of the 1984 amendment to describe the nature of the trust created under the Act. House Report at 2, 4, 5, 11, 12, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 406, 407, 409, 414, 415. Congress apparently thought it unnecessary to include this term in the statutory language in light of the fact that a similar trust provision in the Packers and Stockyards Act, 7 U.S.C. § 196(b) ("[a]ll livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, [etc.] ... shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers"), had consistently been interpreted as creating a nonsegregated floating trust. *See* House Report at 11, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 414; *see also In re Gotham Provision Co.*, 669 F.2d 1000, 1010 (5th Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). In light of this language and history, there is no support for JSG's contention that the statute requires that Tray–Wrap preserve assets allegedly due JSG in an account segregated from Tray–Wrap's other produce-derived holdings, or that Tray–Wrap's failure to do so amounts to conversion of trust assets.

■ In fact, if JSG feared that Tray–Wrap was dissipating trust assets, JSG could have asked the Secretary to initiate a proceeding enjoining such dissipation. Section 499e(c)(4)(ii) of 7 U.S.C. provides district courts with jurisdiction to entertain actions by the Secretary of the U.S.D.A. "to prevent and restrain dissipation of the trust," and "[i]f a firm persists in trust dissipation, the Secretary can initiate an injunctive proceeding in the U.S. district court." House Report at 8, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 411. If the likelihood of dissipating trust assets—here the tomatoes or the proceeds derived from their sale—is shown, a preliminary injunction could issue enjoining defendant from such dissipation and directing it to keep adequate records regarding the trust *res*. Further, we see nothing in the Act that would prohibit the court from exercising its traditional equity powers to grant a preliminary injunction at the instance of a private litigant if the normal standards for such relief are met. *See Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 108 (2d Cir.1987); *but see Frio Ice*, 724 F.Supp. at 1378. Upon

review of the language and history of the Perishable Commodities Act and the facts of the instant case, however, there is no evidence that Tray–Wrap converted trust assets.

Though JSG sought to have the district court require Tray–Wrap to segregate $24,080, as the price at which the tomatoes were sold to Tray–Wrap, the trust *res* is not measured by the contract price; if the commodities themselves or other products derived from them are no longer in the buyer's possession, the value of the trust *res* cannot be greater than the proceeds or receivables derived from the resale of those commodities or products. *See DeBruyn Produce*, 674 F.Supp. at 1407; *Frio Ice*, 724 F.Supp. at 1376. Nor would JSG—if it prevails in its suit—be entitled to an amount in excess of the price of the tomatoes shipped. The Act's history clearly belies JSG's contention that Tray–Wrap is liable for profits made through its use of trust assets, since produce creditors may only recover "to the extent of the amount owed them" under the contract. House Report at 5, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 409.

## II *Injunctive Relief*

■ It is now familiar law in this Circuit that in order to obtain a preliminary injunction a party not only must make an appropriate showing with regard to the merits of the litigation, but also must show the likelihood of irreparable injury if the requested relief is not granted. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue. *See id.; Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 974–75 (2d Cir. 1989); *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917–18 (2d Cir. 1986); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir.1976).

■ Whether to grant a preliminary injunction or not rests in the sound discretion of the district court, and its determination will not be disturbed on appeal unless the grant or denial of this relief is an abuse of discretion. *See Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 973 (2d Cir. 1987). Only when we think the district court may have misapplied the rules governing the issuance of this extraordinary remedy—and that the exercise of its discretion therefore fell outside permissible limits—will we reverse. *See Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 315 (2d Cir.1982). Neither the language nor history of the Act supports JSG's contention that the usual requirements for injunctive relief should not apply to applications based upon the duties of a statutory trustee. Here the district court stated that movant must show "the possibility" of irreparable harm. The Act does not authorize the granting of an injunction on a more lenient standard than required under the district court's ordinary equity injunction must show that it is *likely* to suffer irreparable harm if equitable relief is denied. *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir.1985); *Jackson Dairy*, 596 F.2d at 72. Likelihood sets, of course, a higher standard than "possibility."

Tray–Wrap's principal argument is that the district court erred in granting JSG a preliminary injunction when JSG failed to show a likelihood of irreparable injury. Specifically, Tray–Wrap contends that the harm done by its failure to pay for the order of tomatoes, if any, may be compensated through an action by JSG for money damages. As we have noted, it is settled law that when an injury is compensable through money damages there is no irreparable harm. *Jackson Dairy*, 596 F.2d at 72.

## III *Preservation of Assets*

Although JSG acknowledges its suit is for the recovery of money due from the shipment of its tomatoes to Tray–Wrap, it alleges nonetheless that it is likely to suffer irreparable harm unless Tray–Wrap is required to segregate Perishable Commodities Act trust assets in an account to be supervised by the district court. In sup-

port of this position JSG states that because Tray–Wrap failed to segregate trust assets from its other holdings, it has converted the trust to its own use and thus is liable to JSG for all profits made from trust funds. Given this, JSG argues that the precise calculation of money damages becomes increasingly difficult as Tray–Wrap continues to make use of trust assets. Additionally, JSG contends that absent the segregation of trust funds its claim under the Act is subject to dilution by the claims of other produce creditors whose rights arose later than JSG's.

Clearly, the assumption that underlies this argument is that Tray–Wrap is not or may not be in a position to pay creditors' claims. But nothing in the record sustains this assumption. Instead, Tray–Wrap has presented evidence of substantial current assets and sound financial health. JSG does not contest this; it demonstrates only a remote and speculative possibility of future harm rather than the imminent likelihood of injury. Consequently, it has made no showing of irreparable harm with respect to its assertion that its damage claim will be diluted by subsequent trust creditors. *Cf. Tucker Anthony*, 888 F.2d at 975.

## CONCLUSION

As noted, a preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. *See Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986); *Medical Society v. Toia*, 560 F.2d 535, 538 (2d Cir.1977). Accordingly, because JSG has not demonstrated the likelihood that it will suffer irreparable harm unless Tray–Wrap segregates trust assets, but instead may be adequately compensated by money damages, the order granting the preliminary injunction is reversed, and the matter remanded to the district court with directions to vacate it.

Reversed and remanded.