In re CHI–MAR FOODS, INC., Debtor.

THREE "S" FARMS, INC., and Bruce de'Medici, as Chapter 7 Trustee of Chi–Mar Foods, Inc., Plaintiffs,

v.

PLYMOUTH CAPITAL LTD., Oxford Capital Corporation, Oxford Capital USA, Inc., Victoria Nowakowski, Business & Capital Development, Ltd., and Richard Woods, Defendants.

Bankruptcy No. 96 B 21560.
Adversary No. 96 A 01718.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 15, 1997.

Scott N. Schreiber, Stuart M. Widman, Anne L. Sarkinen, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., Chicago, IL, for Plymouth Capital Ltd., Oxford Capital Corp.

Douglas Lipke, Robert J. Patton, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Three "S" Farms, Inc.

Bruce E. de'Medici, Chicago, IL, for Trustee.

Susan G. Castagnoli, Naperville, IL, for Chi–Mar Foods, Inc.

### *MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

This action was brought by Three "S" Farms, Inc., ("Farms") and the Chapter 7 Trustee against several financing companies holding security interests in the debtor's accounts receivables. In Count I of the complaint, Farms alleges that it possesses a superior lien in the debtor's receivables by reason of a trust created by the Packers and Stockyard Act ("PSA"). 7 U.S.C. § 197. The problem with the action is that the PSA only creates a trust in sales of "live poultry" by a "live poultry dealer." The debtor did not buy or sell "live poultry"; it dealt with only dead chickens. The defendants, recognizing this distinction, moved to dismiss Count I for failure to state a claim. For the reasons set forth below that motion is granted.

## DISCUSSION

The PSA provides:

All poultry obtained by a *live poultry dealer*, by purchase in *cash sales or by poultry growing arrangement*, and all inventories of, or receivables or proceeds from such poultry or poultry products derived therefrom, shall be held by such *live poultry dealer* in trust for the benefit of all unpaid cash sellers or poultry growers of such poultry, until full payment has been received by such unpaid cash sellers or poultry growers, unless such *live poultry dealer* does not have average annual sales of live poultry, or average annual value of live poultry obtained by purchase or by poultry growing arrangement, in excess of $100,000. 7 U.S.C. § 197(b)

The PSA clearly defines a "live poultry dealer" as "a person engaged in the business of obtaining live poultry by purchase or under a poultry growing arrangement for the purpose of either slaughtering it or selling it for slaughter by another ..." 7 U.S.C. § 182(10).

Farms has not alleged that the debtor was a "live poultry dealer" or that it sold the debtor "live poultry." The only allegation in the complaint implicating "live poultry" was Farms' allegation that "[u]pon Debtor's order to Three S Farms for poultry, poultry products and inventories, Three S Farms would order the same from its suppliers. Certain of these suppliers either raised live poultry or had contracts to raise live poultry." Complaint ¶ 21.

In its response to the motion to dismiss, Farms concedes that it did not sell live poultry to the debtor. It contends that this fact is irrelevant. Rather, Farms' theory is that somewhere there are live poultry growers or unpaid cash sellers of live poultry who were not paid as a result of the debtor not paying Farms for the poultry products (dead chickens). According to Farms' interpretation of the PSA, "a floating pool of trust assets was created because Plaintiff's suppliers, cash sellers and poultry growers remain unpaid and notice was filed to preserve the trust." Response at p. 5. The problem with the

argument is that it goes beyond the express terms of the PSA.

■ A claim arises under the PSA only if four requirements have been met:

1) a live poultry dealer was involved;

2) the live poultry was purchased in cash sales or by a poultry growing arrangement; [1]

3) the claim is limited to only the "live poultry activities of the live poultry dealer;"

4) written notice was given by the "unpaid cash seller or poultry grower" within 30 days of the final date for making payment filed with the Secretary of Agriculture.

■ Farms has failed to satisfy even one of the elements: 1) the debtor did not deal in live poultry; Farms did not sell live poultry to the debtor; 2) there is no allegation that the debtor obtained product from Farms by cash sales; [2] 3) none of the debtor's activities involved live poultry; (*see Bunting, Jr. v. Perdue, Inc.* 611 F.Supp. 682 (E.D.N.C.1985) (defendant's de minimis sales of live poultry did not subject its entire business to the PSA; here there are no allegations that the debtor even had de minimis dealings with live poultry) and 4) the required notice was not given. Farms relies on the filing of this complaint on August 23, 1996, as satisfying the notice requirement.[3] Even assuming that the one notice of all unpaid transactions satisfied the requirements of the PSA, Farms was not the party required to give the notice. The PSA clearly states that it is the "unpaid cash seller or poultry grower" who is to give the notice. If it is Farms' suppliers

were the "unpaid cash seller or poultry grower," then they are the ones who should have given the notice.

Farms attempts to extend the reach of the PSA by arguing that its suppliers "either raised or had contracts to raise the live poultry." ¶¶ 14, 23. But that would only mean that Farms' suppliers had claims against it under the PSA, and that a trust was created in Farms' inventories, receivables and proceeds, not the debtor's.[4]

Farms argues that "a floating pool of trust assets was created because Plaintiff's suppliers, cash sellers and poultry growers remain unpaid and notice was filed to preserve the trust." Response at p. 5. Farms contends that it "does not seek to recover money for itself but instead seeks payment for these unpaid growers or cash sellers for the money due and owing to them." [5] Response at p. 4. According to Farms interpretation of the PSA, the "floating trust" included the inventory, receivables and proceeds from the sale of what was once live poultry sold to it. So when Farms sold its inventory to the debtor, even if it was then dead chickens, it was still proceeds subject to the trust and they can trace those proceeds to the debtor's inventory and its receivables.

■ Farms has taken the term "floating trust" out of context and attempted to apply it in a manner not contemplated by the statute. For instance in *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75 (2nd Cir.1990) the court determined that a "floating trust" is created by the Perishable Commodities

---

1. There is no contention that a poultry growing arrangement existed.

2. A "cash sale" is defined by the Act as a sale "in which the seller does not expressly extend credit to the buyer." § 197(e).

3. In its response, Farms attached a notice that was sent to the Secretary of Agriculture by Federal Express. The notice was not attached to the complaint, nor did it allege notice was given. So even if mailing the notice constitutes "filing," the complaint is fatally deficient on its face.

4. The cases cited by Farms are distinguishable. In *Central Trust v. B & L Leasing*, 669 F.Supp. 828 (S.D.Ohio 1987) the funds in dispute were clearly proceeds subject to the PSA as the defendant was in the business of slaughtering livestock

sold to it. In the *Roxford Foods Litigation* cases the principal parties to the dispute, Purina and Roxford, had a contract for a "poultry growing arrangement" which gave rise to Purina's trust claims under the Act. Tracing of the trust funds was then permitted to a person with knowledge of Purina' trust fund claims. In this case, however, the trust was never created because Farms did not sell live poultry to the debtor and the debtor did not deal with live poultry.

5. This also raises a question of Farms "standing" to make claims on behalf of the "unpaid growers or cash sellers." This Court need not address that issue since it has concluded that Farms has failed to allege a claim under the PSA.

Act (which is almost identical to the PSA). 7 U.S.C. § 499e(c)(2). However the floating trust is only meant to apply to all proceeds, whether segregated or commingled, that are received by the dealer, i.e., in the context of the PSA the "live poultry dealer," not to proceeds received at other levels of the commercial chain.

There is nothing in the language of the statute that would support extending the PSA to the extent urged by Farms. If that were the case then anyone who dealt in poultry in any form, including retail outlets, would be subject to claims that its assets were part of a PSA trust. Several courts interpreting the Act have refused to extend the Act beyond its express terms. *See Bunting; Wilson v. Gold Kist, Inc.,* 1991 U.S. Dist. LEXIS 16564, *12 (S.D.Ga.1991) ("Although the Plaintiffs imply that Gold Kist acted 'with respect to live poultry' because the final step of commercial egg production is the sale of the 'spent' hens for slaughter, these salvage sales are too far removed from the alleged unlawful practices to bring this suit within the ambit of the Act.") This Court agrees and will, therefore, grant the defendants' motion to dismiss Count I of the complaint.

An Order will be entered in accordance with this opinion.