**LENTJES BISCHOFF GmbH, Plaintiff,**

v.

**JOY ENVIRONMENTAL
TECHNOLOGIES, INC.,
Defendant.**

**No. 97 Civ. 6296(SAS).**

United States District Court,
S.D. New York.

Oct. 31, 1997.

Paul F. Doyle, Kelley, Drye & Warren LLP, New York City, for plaintiff.

George P. Felleman, Francis X. Dehn, Pollet & Felleman, LLP, New York City, for defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On September 29, 1997, plaintiff Lentjes Bischoff GmbH ("Bischoff") filed an Order to Show Cause pursuant to Rules 30, 34 and 65 of the Federal Rules of Civil Procedure for expedited discovery and a preliminary injunction requiring defendant Joy Environmental Technologies, Inc. ("Joy") to provide it with a letter of credit in the amount of $10.7 million to replace a letter of credit in the same amount set to expire on October 31, 1997. For the reasons stated below, plaintiff's motions are denied.

### I. Factual Background

The following facts are undisputed, except as otherwise indicated. Bischoff is a German company specializing in environmental engineering. Joy is a Pennsylvania corporation that manufactures industrial air pollution and ash handling equipment. In 1991, Bischoff and Joy formed a consortium to bid for a contract with the Taiwan Power Company (TPC) to build a desulfurization system ("the system") for a power plant in Taiwan. Acting as "Consortium Leader," Bischoff submitted a bid and was awarded the contract (the "TPC contract") in July, 1992. *See* Declaration of Dieter Göbel (Bischoff procurement manager) ("Göbel Dec.") at ¶¶ 4–6; Memorandum of Law of Defendant Joy Technologies, Inc. in Opposition to Plaintiff Lentjes Bischoff GmbH's Request for an Injunction ("Def's Brief") at 6–7.

The TPC contract provides that in specified circumstances, TPC can assess liquidated damages against Bischoff. Most importantly, in the event of a severe failure in the performance of the system, Bischoff could be liable to TPC for liquidated damages of $155 million, the entire value of the contract. *See* Göbel Dec. at ¶¶ 6, 7; Def's Brief at 7, 11. TPC can also assess liquidated damages of $155,000 per day (up to

$7.7 million) for inexcusable delay in completion of the system. *See* TPC contract at §§ 8.2, 8.3. The existence and amount of the performance-related damages are linked to a series of tests that are to be performed on various components of the system. Because of construction delays, the system is not yet complete, and none of the tests have been performed. *See* Göbel Dec. at ¶¶ 26–28; Def's Brief at 14.

The TPC contract also required Bischoff to provide TPC with a performance bond for 10% of the total contract price that will be valid for twenty-seven months after the system is operational. *See* TPC contract at § 5.1; Göbel Dec. at ¶¶ 29–30. To meet this requirement, Bischoff provided TPC with a standby letter of credit in the amount of $15.5 million. *See* Göbel Dec. at 30.

In December, 1992, Bischoff and Joy executed an agreement to govern their relationship during and after the construction period (the Bischoff/Joy contract). *See* Göbel Dec. at 6–7; Def's Brief at 7, 11. Under the terms of this contract, Bischoff is responsible for approximately 29% of the TPC contract and Joy is responsible for the remaining 71%. Bischoff/Joy contract at § 1. Further, each party is assigned "all technical, commercial, financial, fiscal and legal risks" incident to its individual performance, including the risk of liability for liquidated damages assessed by TPC for inadequate performance. *See id.* at §§ 3.1, 7.3. The cost of any such damages are borne by the party at fault up to 10% of that party's proportionate stake in the contract; beyond this limit, damages are to be shared proportionally. *See id.*

On the subject of the performance bond, the Bischoff/Joy contract notes that "Joy has provided Bischoff with a letter of credit for U.S. $10,700,000 which shall be governed by the terms stated therein with respect to drawing and the costs of which shall be borne by Joy .... The value of the Joy provided letter of credit will be reduced to U.S. $5,000,000 after initial operation of the [system] ...." Bischoff/Joy contract at § 3.6. The letter of credit referred to in this section was issued by Bankers Trust Company on August 26, 1992, approximately three months prior to the execution of the Bischoff/Joy

contract. In a paragraph of the letter discussing its duration, it states that "[i]n any event, the maturity date of this letter of credit shall not be extended beyond October 31, 1997." Joy Letter of Credit at 2.

Construction of the system did not progress smoothly, and relations between the parties began to deteriorate. One point of conflict was the issue of whether Joy could allow its letter of credit to expire by its terms on October 31, 1997, or whether § 3.6 of the Bischoff/Joy contract requires the letter to be extended or replaced until Bischoff's potential liability to TPC expires. This issue is an important one, according to Bischoff, because Joy has been reduced in recent months to a heavily-indebted shell company. Without the letter of credit, Bischoff argues, Joy will have no way of satisfying any judgment that may be levied against it. Joy half-heartedly denies that it is in dire financial straits; its sole director admits, however, that it currently has a net worth of negative $31 million. *See* Deposition of Edmund Freeman at 57:25–58:8.

On January 30, 1997, Joy initiated a currently pending arbitration before the International Court of Arbitration in Zurich, Switzerland, alleging that Bischoff had failed to meet various performance requirements under the TPC contract, and had thereby caused Joy financial injury. Joy seeks $11.4 million in damages and a declaration that Bischoff is responsible for any liquidated damages that may be assessed by TPC. *See* Joy Request for Arbitration at §§ 5.1, 5.3. Bischoff counterclaimed in the arbitration, demanding that Joy renew its letter of credit and pay damages of approximately $1.6 million. *See* Def's Brief at 4. Out of concern that the arbitrators would not reach the issue of Joy's renewal of the letter of credit until after its expiration, Bischoff began this action on September 29, 1997.

## II. Legal Standard for Granting a Preliminary Injunction

█ Generally, a preliminary injunction is appropriate when the moving party can show that it is threatened with irreparable injury and either 1) a probability of success on the merits or 2) sufficiently serious ques-

tions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in the movant's favor. *See Time Warner Cable Co. v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir.1997). However, "where an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by mandating some positive act, the moving party must ... show[] clearly that he or she is entitled to relief or that extreme or very serious damage will result from a denial of the injunction." *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir.1997) (citations and internal quotes omitted).

 Generally, an irreparable injury "is one that cannot be redressed through a monetary award." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990). Therefore, courts should avoid issuing preliminary injunctions in cases where money damages would be adequate compensation. *See id.* However, an exception to this rule exists when it is shown that satisfaction of a money judgment will be impossible without an injunction. *See Alvenus Shipping Co. v. Delta Petroleum Ltd.*, 876 F.Supp. 482, 487 (S.D.N.Y.1994).

## III. Discussion

### A. Jurisdiction

 A preliminary issue is whether this court should intervene in the parties' dispute, given that an arbitral proceeding covering the same issues is currently pending. Joy acknowledges the fact that district courts have the power to grant injunctive relief in aid of arbitration, but argues that doing so is only warranted when the movant will suffer catastrophic harm, such as the loss of its business. *See* Def's Brief at 14–15. This argument is without merit. As the Second Circuit has observed: "The fact that a dispute is to be arbitrated ... does not absolve the court of its obligation to consider the merits of a requested preliminary injunction; the proper course is to determine whether the issue is a proper case for an injunction." *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir.1984) (internal quotes omitted).

It is true that the *Roso–Lino* court found an injunction to be warranted in that case partially because one of the parties was faced with the loss of its business. However, there is nothing in the opinion to suggest that the granting of a preliminary injunction should be limited to such a case. In fact, subsequent case law indicates that the *Roso–Lino* holding is to be applied broadly. In *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir.1990), for instance, the Second Circuit held that preliminary injunctions are appropriate whenever they are necessary to protect the integrity of a pending arbitration: "Arbitration can become a hollow formality if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. A district court must ensure that the parties get what they bargained for—a meaningful arbitration of the dispute." *Id.* at 1053 (internal quotes omitted).

While a loss of one party's business could certainly cause an arbitration proceeding to become a "hollow formality," so could acts taken by one party to render itself judgment-proof before a decision can be rendered. The "catastrophic harm" rule proposed by Joy thus has no basis in law or logic. If Bischoff is able to show that the prerequisites for a preliminary injunction are present in this case, then an injunction is proper regardless of the pending arbitration.

### B. Preliminary Injunction

#### 1. Standard for Relief

Another preliminary issue is whether the usual "prohibitory" or the heightened "mandatory" preliminary injunction standard should be applied in this case. Bischoff argues that the injunction it requests is prohibitory in that it would only require Joy to maintain its currently effective letter of credit. Viewed from one perspective, at least, this argument is sound: Granting the injunction would ensure that the parties have the same relative financial position when the arbitration is decided that they are in now. However, the letter of credit expires by its terms on October 31, 1997 and cannot be renewed by Joy unilaterally. Therefore, one could just as easily characterize the request-

ed relief as a mandatory injunction: It would require Joy to affirmatively enter the marketplace seeking a new letter of credit for $10.7 million. Borderline situations like this have led our appellate court to observe that "the distinction between mandatory and prohibitory injunctions is often more semantical than substantive." *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 43 (2d Cir.1997) (internal quotes omitted). I need not decide here which semantic characterization is more appropriate, as I find that Bischoff has failed to satisfy even the lower prohibitory injunction standard.

## 2. Irreparable Injury

 The initial prerequisite for a prohibitory preliminary injunction is a showing that, absent the requested relief, the plaintiff will suffer irreparable injury. This requirement is "[p]erhaps the single most important" element of the preliminary injunction test. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985) (internal quotes omitted). To justify an injunction, the complained-of injury must be "likely and imminent, not remote and speculative." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir.1995); *see also JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (the "possibility" of harm is insufficient). An injury is not "speculative" simply because it is not certain to occur; however, "a plaintiff's imaginative, worst case scenario flowing from the defendant's alleged wrong" does not adequately show irreparable injury. *USA Network v. Jones Intercable, Inc.*, 704 F.Supp. 488, 491 (S.D.N.Y.1989).

 Bischoff argues that it is faced with likely irreparable harm in that TPC will probably assess liquidated damages against it for late and/or inadequate performance. If such damages are assessed, it contends, only Joy's letter of credit stands between it and sole liability to TPC, given Joy's precarious-

at-best financial status. *See* Göbel Dec. at ¶ 3.

This argument has superficial appeal, but wilts under closer scrutiny. First, Bischoff does not now face a liquidated damages judgment; years will pass before TPC obtains such a judgment, if indeed it ever does. Not only has TPC not yet made any demands for performance-related liquidated damages, it has not even expressed dissatisfaction with either Joy or Bischoff's performance. Given the performance problems and delays that have occurred, this may well change. However, it will not (and indeed cannot) change for some time: The system tests upon which performance-related damages would be based have not even begun, and will not be complete before September, 1999 at the earliest. *See* Göbel Dec. at ¶¶ 26, 28.

The arbitrators, on the other hand, will reach the letter of credit issue sometime within the next nine months. *See* Reply Memorandum in Further Support of Lentjes Bischoff GmbH's Request for an Injunction in Aid of Arbitration at 2. There is thus no question that the letter of credit issue will be resolved well before Bischoff is faced with the massive claim for performance damages it fears. Under Bischoff's reasoning, this is no solace, because by the time the issue is decided, Joy will be unable to pay any judgment it may be found to owe. When its letter of credit expires, Bischoff contends, Joy will become effectively worthless.

The problem with this theory is that, as Bischoff itself repeatedly points out, Joy is effectively worthless now. Bischoff apparently believes that Joy can simply be ordered to "renew" its current letter of credit. However, that letter expires by its own terms on October 31, and no replacement can be obtained without the consent of a creditor. Given Joy's large negative net worth, this consent is unlikely to be forthcoming now or nine months from now. Joy's current creditworthiness approaches zero; it can hardly get worse over the next nine months.[1]

---

1. In fact, there is some basis to believe that it may actually improve. Under § 3.6 of the Bischoff/Joy contract, the amount of Joy's letter of credit can be reduced to $5 million once the last component of the system becomes operational. According to Bischoff, this is scheduled to hap-

pen in February, 1998. *See* Göbel Dec. at ¶ 28. Moreover, Bischoff concedes that Joy will receive an amount up to $5.3 million currently held by TPC in a "retention account" when the system is completed, subject to TPC damages claims. *See* Letter of Lentjes Bischoff GmbH, Oct. 28, 1997,

Realistically, the only way Joy could comply with an order to obtain a new letter of credit would be to draw on an existing line of credit held by one of its parent companies. In fact, according to Bischoff, this is how Joy obtained its current letter. *See* Letter of Lentjes Bischoff GmbH, Oct. 28, 1997, at 2. It is not disputed that these parent companies are large, solvent businesses, and are likely to remain in a position to guarantee future lines of credit well into the future. *See id.* (characterizing Joy Technologies, Inc. ("JTI"), Joy's direct parent, as "a solvent company with sales of hundreds of millions of dollars"). Moreover, there is no reason to believe that they will be less disposed to extend this credit to Joy in nine months than they would be today.[2] Joy's ability to obtain a replacement letter of credit at that time therefore appears to be exactly the same as it is now. In other words, granting the proposed injunction would have no effect whatever on the question of whether Bischoff actually suffers the harm it fears.

Under these circumstances, it is clear that Bischoff's assertion that it will suffer irreparable injury absent a preliminary injunction is not merely speculation, it is speculation without any reasonable factual basis. Courts have repeatedly rejected more plausible theories of irreparable injury. *See, e.g., Jayaraj v. Scappini,* 66 F.3d 36, 40 (2d Cir.1995) (preliminary injunction preventing employer from terminating employee unwarranted; fear that employer would hire a replacement while the legality of the termination was litigated, and thus make reinstatement less likely, was "purely speculative."). Bischoff's request for a preliminary injunction thus fails to clear the first hurdle.

### 3. Bischoff's Claim on the Merits

■ A preliminary injunction might not be warranted even if Bischoff could meet the irreparable harm requirement, as its interpretation of the Bischoff/Joy contract is deeply suspect. Bischoff certainly could not meet the clear entitlement to relief or likelihood of success on the merits tests. *See Phillip,* 118 F.3d at 133; *Time Warner,* 118 F.3d at 923. In fact, whether it could present even a fair ground for litigation on the issue would be a close question. *See id.*

Bischoff argues that § 3.6 of the contract envisions that Joy will maintain its letter of credit in place until Bischoff is relieved of liability to TPC. As Joy points out, however, this argument is simply not supported by the contractual language. Section 3.6 describes the letter of credit that Joy had already obtained, but is utterly silent on the subject of mandatory renewal: "Joy has provided Bischoff with a letter of credit for U.S. $10,700,000 which shall be governed by the terms stated therein with respect to drawing...."

If renewal was as important to Bischoff as it now claims, it would have explicitly required that the letter be renewed until such time as the job was complete and/or such time as all disputes were resolved. A provision clearly requiring indefinite renewal would not have been at all difficult to draft. Moreover, the passage that incorporates by reference Joy's existing letter of credit states that "in any event, the maturity date of this letter of credit shall not be extended beyond October 31, 1997." Bischoff argues that the letter is incorporated into § 3.6 only with regard to "terms ... with respect to drawing," and the letter's expiration date is not such a term. Even if this is true, the presence of the expiration date in the letter of credit, combined with its partial incorporation by reference, should surely have alerted Bischoff to the fact that Joy's indefinite renewal obligation—if such an obligation

---

at 2. With a reduced letter of credit burden and an infusion of cash, Joy's ability to comply with an order to provide Bischoff with a new letter would doubtless improve. Of course, I do not assume that in a project so beset with difficulties, everything will now proceed according to plan. I merely note that there is a possibility, though perhaps a remote one, that Joy's financial position will improve enough to benefit Bischoff.

**2.** Bischoff speculates that while JTI has sufficient credit to obtain a letter of credit now, it will not when the issue is settled in arbitration. *See id.* This surmise is based on Joy's statement that JTI desires to use its credit for other purposes. However, the likelihood that JTI will exhaust all its available credit in the next nine months appears remote, especially as its existing line of credit is not secured by any particular Joy or JTI assets. *See id.* at 2 n. 1.

were intended—would have to be made explicit. Therefore, not only does Bischoff fail to identify contractual language that even arguably requires indefinite renewal, the language it cites raises a strong inference that indefinite renewal was not intended.

## C. Expedited Discovery

█ Bischoff also moves for expedited discovery on the subject of Joy's financial condition. To evaluate a request for expedited discovery, the following factors must be considered:

(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Irish Lesbian and Gay Organization v. Giuliani*, 918 F.Supp. 728, 730 (S.D.N.Y. 1996). Bischoff does not meet this standard. As I have already discussed, it has not shown a threat of irreparable injury or that it has a significant probability of success on the merits. All four factors therefore counsel against granting expedited discovery. Furthermore, I note that Bischoff has failed even to assert that discovery taken pursuant to the arbitral proceeding will be inadequate. In addition to being unwarranted under the terms of the test outlined above, then, expedited discovery ordered by this court would appear to be completely unnecessary.

## IV. Conclusion

For the reasons stated above, the plaintiff has failed to demonstrate that it is likely to suffer irreparable harm absent the requested relief. Its motion for a preliminary injunction is therefore denied. For the same reasons, and because it has also failed to show that it has any probability of success on the merits of its claim, the plaintiff's motion for expedited discovery is also denied.

SO ORDERED.