**AIM INTERNATIONAL TRADING, LLC, Moshe Aviv, Aim Dania, Inc. and Aim International Trading, Inc., Plaintiffs,**

v.

**VALCUCINE SpA., IBI LLC, Kitchens of Veneto, Inc., Brian Jevremov, Ruben Braha, and Jeffrey McDuffee, Defendants.**

**No. 02 CIV 1363(PKL).**

United States District Court,
S.D. New York.

Feb. 22, 2002.

Inc. ("AIM Dania"), and AIM International Trading, Inc. ("AIM, Inc.") apply pursuant to Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order ("TRO") against defendants Valcucine SpA ("Valcucine"), IBI LLC ("IBI"), Kitchens of Veneto, Inc. ("Veneto"), Brian Jevremov, Ruben Braha, and Jeffrey McDuffee, enjoining Valcucine, its agents, attorneys, and all those acting on their behalf from (1) selling products offered for sale by Valcucine under the trademarks "Valcucine" and "New Art" dealerships which were established by AIM pursuant to a March 31, 1999 Exclusive Distributorship Agreement ("Distributorship Agreement"); (2) selling Products to any person within the United States other than AIM; and (3) directing Valcucine to continue to fulfill and ship on a C.O.D. basis orders for Products forwarded to it by AIM in accordance with the Distributorship Agreement. For the following reasons, plaintiffs' application is granted.

### Background

Plaintiffs bring this action for *inter alia:* (1) breach of contract; (2) breach of implied covenant of good faith; (3) fraud; (4) tortious interference with contractual and business relationships; (5) disparagement and injurious falsehood; and (6) unjust enrichment.[1] The case was removed by defendants on February 21, 2002, one day before the state court was to have a hearing regarding the TRO.

Valcucine is an Italian company engaged in the manufacture of high-end kitchen cabinetry and furniture components sold in Europe and elsewhere. *See* Complaint at ¶ 5. The plaintiffs allege that AIM and Valcucine entered into the Distributorship

---

### MEMORANDUM ORDER

LEISURE, District Judge.

Plaintiffs AIM International Trading, LLC ("AIM"), Moshe Aviv, AIM Dania,

---

1. The Complaint actually states ten claims against different groups of the defendants, but these claims only involve six different causes of action.

Agreement on March 31, 1999, whereby AIM was appointed by Valcucine as the exclusive distributor of Valcucine Products in the United States. *See* Complaint at ¶ 6. AIM's business is based solely on its role as exclusive distributor of Valcucine products. *See* Affirmation of May Orenstein, Esq., February 21, 2002 ("Orenstein Aff."), at ¶ 15.[2] Further, plaintiffs claim that they have spent hundreds of thousands of dollars in start-up costs in connection with creating a distribution network in the United States for Valcucine's products. *See* Complaint at ¶ 24. Plaintiffs claim that their efforts in marketing Valcucine have proven fruitful, having secured agreements with five dealers to sell, through AIM, Valcucine's products in the United States.[3]

However, by a letter dated October 24, 2001, Valcucine purported to terminate its Distributorship with plaintiffs, as of February 28, 2002, expressing dissatisfaction with the plaintiffs efforts. Plaintiffs allege, however, that the Distributorship agreement was terminable only for cause, and that defendants had no cause in order to terminate the agreement. *See* Orenstein Aff. at ¶ 6.

On January 10, 2002, plaintiffs filed the instant case, alleging a scheme by which the defendants seek to misappropriate the good will, and the network of five dealerships built by plaintiffs pursuant to the Distributorship. *See* Orenstein Aff. at ¶ 7. Following commencement of the action, by letter dated January 17, 2002, Valcucine purported to terminate the Distributorship immediately. *See* Orenstein Aff. at ¶ 8. On February 7, 2002, pursuant to an arbitration clause in the Distributorship, Valcucine filed a request for arbitration to the Secretariat of the International Court of Arbitration, seeking, among other things, declaration that Valcucine validly terminated the Distributorship. *See* Orenstein Aff. at ¶ 10. Plaintiffs now seek the above described temporary restraining order during the pendency of the arbitration proceedings.

### Discussion

The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical.[4] It

---

**2.** Because the instant action was only removed from state court late yesterday, plaintiffs have submitted the affirmations which they had prepared for the state court proceeding planned for today.

**3.** These dealerships are located in New York City; Chicago; Dania, Florida; Los Angeles; and San Juan, Puerto Rico. *See* Affirmation of Izzy Ashkenazy, sworn to on February 21, 2002, at ¶ 5.

**4.** Plaintiffs initially made an application for a preliminary injunction in state court pursuant to CPLR § 7502(c) which governs the availability of provisional remedies in arbitration cases. *See SG Cowen Securities Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir.2000). Section 7502(c) provides in relevant part, that an order of attachment or for a preliminary injunction will issue only if the "award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."

N.Y. C.P.L.R. § 7502(c). Although this area of the law is far from clear, plaintiffs assert in their original moving papers to the state court, that the language of § 7502(c) suggests that a party moving under it, "need *not* show irreparable injury, likelihood of success and a balance of equities in its favor." *See* Orenstein Aff. at ¶ 13 (citing *GBI Capital Partners, Inc. v. Aivaliotis*, 2001 WL 881105 (N.Y.Sup. 2001)); *but see SG Cowen*, 224 F.3d at 82 ("New York caselaw is at best ambivalent about whether or not Section 7502(c) requires that traditional equitable criteria for the granting of temporary relief be met.") (collecting cases).

This argument is of no moment because federal law now governs the proceedings. "[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings..." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 437,

is well established that in order to obtain such relief, the movant must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Whether injunctive relief should issue or not "rests in the sound discretion of the district court which, absent abuse of discretion, will not be disturbed on appeal." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (quoting *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 755, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986)).

■ A temporary restraining order pursuant to Fed.R.Civ.P. Rule 65(b) is designed to preserve the status quo. "The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1125 (2d Cir.1989) (quoting *Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n,* 306 F.2d 840, 842–43 (2d Cir.1962)). Thus, a temporary restraining order should issue for just so long as is necessary to hold a hearing. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

■ The Second Circuit has deemed the threshold showing of "irreparable harm" to

94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *see also Baker's Aid v. Hussmann Foodservice Co.,* 830 F.2d 13, 15 (2d Cir.1987) ("The question of whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are

be of particular significance under Rule 65, regardless of the strength of the movant's case on the merits. *See, e.g., Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) ("a showing of probable irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction'") (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir.1983)). Accordingly, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters,* 903 F.2d at 907 (citing *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 (2d Cir.1989)). The movant is required to establish not a mere *possibility* of irreparable harm, but that it is *"likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990) (emphasis in original). "Likelihood sets, of course, a higher standard than 'possibility.'" *Id.*

In *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.,* 749 F.2d 124 (2d Cir.1984), the Second Circuit preliminarily enjoined Coca–Cola from terminating plaintiff as a distributor pending arbitration. *See id.* at 127. The Court explained the basis of its decision as follows:

The loss of Roso–Lino's distributorship, an ongoing business representing many years of effort and the livelihood of its husband and wife owners, constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated by

sometimes relevant to the decision to grant or deny."). Therefore, plaintiffs must now proceed with their application for a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

subsequent monetary damages.... It is equally clear that the equities tip decidedly in favor of Roso–Lino. It is unlikely that Coca–Cola will suffer greatly if the eleven-year relationship is continued for a short while. The two owners of Roso–Lino, on the other hand, stand to lose their business forever. Because the equities tip (rather heavily) in favor of granting a preliminary injunction, Roso–Lino need demonstrate only "serious questions going to the merits", rather than "likelihood of success on the merits".... That there are serious questions is clear from the parties' conflicting stories of the reasons had for ending Roso–Lino's distributorship; therefore, the test for a preliminary injunction is met.

Id. at 125–26 (citations omitted).

 In the instant case, the factual circumstances, as well as the balance of equities, are closely analogous to those described by the *Roso–Lino* Court. Plaintiffs' business is based solely on the distribution of Valcucine products in the United States. *See* Orenstein Aff. at ¶ 15. In their three-year relationship with Valcucine, plaintiffs have created a network of distributors for the sale of Valcucine products. If the plaintiffs' application for a temporary restraining order is not granted, that network of relationships may be destroyed, and plaintiffs themselves will have no products to sell. Monetary damages cannot fully compensate the plaintiffs for what they stand to lose their business. *See Roso–Lino*, 749 F.2d at 125–26; *see also Givenchy S.A. v. William Stuart Indus.*, No. 85 Civ. 9911, 1986 WL 3358, at *5–6 (S.D.N.Y.1986) (Leisure, J.) (enjoining termination of licensee's rights pending arbitration of dispute as to licensor's right to terminate). Thus, the Courts finds that plaintiffs have shown irreparable harm.

Further, plaintiffs raise serious questions going to the merits of the litigation. Plaintiffs claim that defendants terminated the Distributorship without cause, while defendants argue that they had cause. Finally, the Court concludes that the balance of equities tips firmly in plaintiffs' favor if the status quo is not preserved, their business will be wiped out. Defendants on the other hand, have not shown how they would damaged by the continuation of their relationship with plaintiffs for the short time associated with a temporary restraining order.

### Conclusion

For the foregoing reasons, plaintiffs' application for a temporary restraining order is hereby granted.

**SO ORDERED.**